```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND

                                :
HEARTLINE FITNESS
  PRODUCTS, INC.                :

     v.                         :  Civil Action No. DKC 2006-0155

                                :
SCOTT CAMPER
                                :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution is Defendant Scott Camper's motion to remove John T. Brennan, The Brennan Law Firm, and any firm affiliated with The Brennan Law Firm from representing Plaintiff Heartline Fitness Products, Inc. (Paper 5). The issues have been briefed fully and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, the court will deny the motion to disqualify.

Plaintiff has filed an action for trademark infringement pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq*. Plaintiff is a Virginia corporation with its principal place of business in Gaithersburg, Maryland. Defendant is a citizen of Maryland, and he worked for Plaintiff as an authorized sales representative between November 5, 2001, and September 5, 2003. Plaintiff alleges that on September 5, 2003, Plaintiff terminated Defendant's association as an authorized sales representative, and specifically advised Defendant that he was prohibited from "representing [him]self as a salesman and/or representative of Heartline Fitness and all of its registered brands and trademark in the future." (Paper 1, at ¶ 8).

Sometime after his termination, Defendant filed suit against Plaintiff in the Circuit Court for Montgomery County, Maryland, in which he claimed nearly $100,000 in unpaid commissions.[1]  The litigation ended with a three-day jury trial in March 2006, as a result of which the jury found that Plaintiff owed Defendant commissions of $5,015.

Plaintiff filed the instant lawsuit January 19, 2006.  In the complaint, Plaintiff alleges that after Defendant's termination, Defendant spoke with a potential customer of Plaintiff's, Woody Moore, a coach at Rockland District High School in Rockland, Maine, and during the conversation Defendant represented himself as a salesman or representative of Plaintiff. Plaintiff further alleges that Defendant sent an invoice to Moore that purported to be from Plaintiff and was signed by Defendant.  Plaintiff contends that Defendant's use of Heartline's name and trademark caused confusion and mistake, and deceived Mr. Moore into believing that Defendant was an authorized salesman for Plaintiff.  In its trademark lawsuit, Plaintiff is represented by attorney John T. Brennan, who also represented Plaintiff in the Montgomery County litigation.

Defendant's *pro se* motion to remove Mr. Brennan, The Brennan Law Firm, and "any firm affiliated with the Brennan Law Firm," concerns a conversation that took place June 5, 2005, during a

---

[1] The parties do not provide the date that Defendant filed his lawsuit in Montgomery County Circuit Court.

2

deposition and settlement discussion in the Montgomery County litigation.  Defendant states that several people were present: Defendant; attorney Mark Kotlarsky, who represented Defendant in the Montgomery County litigation; Heartline's president, Bob Burgess; and Mr. Brennan.  According to Defendant, he asked Mr. Burgess during an off-the-record moment, "[H]ow would you like to handle it if someone calls me to order a power rusher or [other] equipment?"  Mr. Burgess responded by saying, "[G]o ahead and sell it and send me and the customer an invoice so there is a paper trail in order to pay [Defendant] the commissions owed."  Mr. Burgess also said that if Defendant could not sell the equipment, that he should turn the equipment over to Mr. Burgess "and he will sell it and pay [Defendant's] commission."  (Paper 5, at 1).[2] Although not entirely clear, Defendant apparently intends to argue in the present case that he took the phone call from Mr. Moore in good faith, and he plans to call Mr. Brennan as a witness to testify about the conversation.

As aptly stated by Judge Andre Davis in *Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 750 (D.Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998):

> A motion to disqualify is a "serious matter," *Plant Genetic Systems* [*N.V. v. Ciba Seeds*], 933 F.Supp. [514,] at 517 [(M.D.N.C. 1996)], which must be decided on a case-by-

---

[2] Typographical errors in Defendant's paper have been corrected.

case basis.  *See Buckley v. Airshield Corp.*, 908 F.Supp. 299, 304 (D.Md. 1995).  This is so because two significant interests are implicated by a disqualification motion: "the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community."  *Tessier* [*v. Plastic Surgery Specialists, Inc.*], 731 F. Supp. [724] at 729 [(E.D.Va. 1990)]; *Buckley*, 908 F.Supp. at 304.  Nevertheless, "the guiding principle in considering a motion to disqualify counsel is safeguarding the integrity of the court proceedings."  *Plant Genetic Systems*, 933 F.Supp. at 517; *see Hull v. Celanese Corporation*, 513 F.2d 568, 572 (2nd Cir. 1975)(finding that a party's free choice of counsel must yield to "considerations of ethics which run to the very integrity of our judicial process.").  Thus, this court must not weigh the competing issues "with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing an appearance of impropriety, [this Court] is to resolve all doubts in favor of disqualification."  *United States v. Clarkson*, 567 F.2d 270, 273 n. 3 (4th Cir. 1977)(internal quotation marks and citations omitted); *Rogers v. Pittston Co.*, 800 F.Supp. 350, 353 (W.D.Va. 1992); *Buckley*, 908 F.Supp. at 304.

Under Local Rule 704, this court applies the Maryland Rules of Professional Conduct ("MRPC") as they have been adopted by the Maryland Court of Appeals.  Defendant has not identified the ethical rule that is the basis of his motion to remove or disqualify Mr. Brennan.  Defendant's motion apparently is premised on MRPC 3.7, which states in part:

**Rule 3.7 Lawyer as witness.**

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

A motion to disqualify should not be used as a tactical device, *see Buckley v. Airshield Corp.,* 908 F.Supp. 299, 307 (D.Md. 1995); *Personalized Mass Media Corp. v. Weather Channel, Inc.,* 899 F.Supp. 239, 242 (E.D.Va. 1995); *Parke-Hayden, Inc. v. Loews Theatre Mgmt. Corp.*, 794 F.Supp 525, 527 (S.D.N.Y 1992); *Klupt v. Krongard*, 126 Md.App. 179, 206, 728 A.2d 727, 740 (1999), *cert. denied*, 1226 Md. 612, 735 A.2d 1107 (1999), nor should it be used to harass the other party's case, *see Freeman v. Chi. Musical Instrument Co.,* 689 F.2d 715, 722 (7th Cir. 1982); *Klupt*, 126 Md.App. at 206, 728 A.2d at 740.

Rule 3.7 expressly states that an attorney may not act as an advocate where he or she is "a *necessary* witness" (emphasis added). Courts confronted with motions to disqualify based on the attorney-as-witness rule have considered factors such as whether the attorney's testimony is material and whether it is available from another source. *See Personalized Mass Media Corp.,* 899 F.Supp. at

5

243; *World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc.*, 866 F.Supp. 1297, 1302 (D.Colo. 1994); *Parke-Hayden*, 794 F.Supp. 525 at 527; *Smithson v. U.S. Fid. & Guar. Co.*, 186 W.Va. 195, 201, 411 S.E.2d 850, 856 (W.Va. 1991); *Cottonwood Estates, Inc. v. Paradise Builders, Inc.*, 128 Ariz. 99, 105, 624 P.2d 296, 302 (Ariz. 1981); *Klupt*, 126 Md.App. at 207, 728 A.2d at 740.

Here, Defendant has failed to proffer sufficient facts to show that Mr. Brennan is a "necessary witness" as required by Rule 3.7. Defendant admits that, in addition to Mr. Brennan, two other individuals were present during the conversation: his former attorney, Mr. Kotlarsky, and Mr. Burgess. Defendant does not allege that Mr. Kotlarsky and Mr. Burgess are unavailable to testify.[3] Moreover, Defendant does not assert that there is a dispute among the parties as to what was said (or not said) during the conversation, thus, Mr. Brennan's testimony would be unnecessary. Finally, Mr. Brennan stated in his deposition that

---

[3] The court's result would not change even if it considered Defendant's response (paper 9), which was filed late and was returned to Defendant because he failed to sign the document. In his response, Defendant states that he plans to call as witnesses Mr. Kotlarsky, Mr. Brennan, "as well as anyone in the Brennan firm present that day." (Paper 9, attach. 3). Defendant also provides an "affidavit" from Mr. Kotlarsky that describes the conversation. Although titled "affidavit," the statement is more properly viewed as a "declaration" because it was not sworn to in front of an "officer authorized to administer oaths." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002)(quoting Black's Law Dictionary 54 (5th ed. 1979)). Nevertheless, the declaration demonstrates that at least one other witness is available to testify about the conversation, in addition to Defendant, and therefore Mr. Brennan is not a necessary witness.

his recollection of the conversation between Mr. Burgess and Mr. Camper is "sketchy." (Paper 7, ex. 1, ¶ 7). It is unlikely, therefore, that Mr. Brennan's testimony would be helpful or material.

Accordingly, the court will deny Defendant's motion to disqualify Mr. Brennan, The Brennan Law Firm, and any firm affiliated with The Brennan Law Firm from this case. A separate Order will follow.

                                                   /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge